The next case on our calendar this morning is United States v. Ketabchi, number 19-958, and United States v. O. Wimron, number 19-988. And we have first Mr. Daniel Perez, please. May it please the Court, my name is Dan Perez, and I represent defendant-appellant Shahram Ketabchi under the Criminal Justice Act, and I was not counsel below. The evidence failed to demonstrate beyond a reasonable doubt that Ketabchi knew the existence of the scheme to defraud and knowingly joined and participated in it. And I want to make clear at the outset that when I refer to Ketabchi, I'm talking about my client Shahram, not his brother Arash. Ketabchi was involved for three months of the conspiracy. His involvement was limited to helping his brother defend a total of seven chargebacks. The evidence of trial showed that multiple individuals, including an attorney and a merchant card processing company, either defended chargebacks for Arash Ketabchi's business or offered to defend chargebacks. Ketabchi made no sales calls. No one ever saw him on the sales floor because he was 3,000 miles away in California. The government's main witness, Sinclair, testified that he did not believe that Ketabchi knew the extent of his brother's pitches. Witness after witness who testified at trial barely mentioned him at all, and when they did, it was only in connection with the chargebacks. He was paid a total of $17,000 for his participation in this role, for his role, against a total loss amount of between $1.5 million and $3.5 million. And certainly no witness testified that Ketabchi was aware that his brother's business was defrauding people. At the same time, there was considerable evidence that Ketabchi believed that his brother's business was legitimate. Sinclair, the government's main cooperating witness, told law enforcement that more than half of the customers were happy. Joanne Lamort called American Express after originally filing a complaint and said, Counsel, it isn't up to us to say whether there was guilt beyond a reasonable doubt. It's a question of whether there is enough evidence to get to a jury on which a jury could so find. And isn't the fact that he said online that there should be he should show legitimacy, that there were some letters showing complaint, and that he lied when he said not involved in his brother's business, which suggests something about why he wanted to say something that wasn't true. But if you take those together, they're not a lot, and they may not be enough to convince me beyond a reasonable doubt. But isn't that enough evidence of a basis of which a jury can so find the guilt? Judge Calabresi, let me take those in order. With respect to the comment show legitimacy, that was a comment that Ketabchi made to his brother that he would have made if the business was actually legitimate. In the same way that they're having a conversation about setting up email accounts and 800 numbers, and Ketabchi says to his brother, how many hours a month do you think people are going to be using the 800 number up to a thousand? You don't say things like that if you know the business is an overall fraud. And he came in at the tail. So that's you're drawing an inference. You're drawing an inference in favor of your client. And the jury was entitled to draw an inference against your client. Overcompeting inference is not classically a jury question. Respectfully, Judge Walker, I'm not drawing an inference. I'm pointing to the trial testimony and to the trial exhibits where they're having an exchange about 800 numbers. And he's not going to ask his brother, are people going to be using the 800 numbers up to a thousand dollars, excuse me, up to a thousand hours a month if he knows that it's just a big fraud? Isn't it also so that Mr. Ketabchi knew that he had received numerous official complaints of fraud lodged against the company, A1, as well as that the business had been put on a blacklist and that the A1 Wells Fargo account that had been used had been shut down and suggested to his brother that they not transfer the proceeds between their Bank of America accounts because Bank of America would also shut them down? He also suggested guilty knowledge that the jury might have been entitled to rely on. Your Honor, this was a telemarketing business, as the court was aware, and telemarketing businesses had many complaints. The fact that there were complaints wouldn't have alerted him to the fact that this was a fraud. And again, what was missing was a witness to say that he knew this was a fraud. Remember, he came in at the tail end of this business. There was no witness, whether it was his brother or Sinclair, who said he knew. We told him that this was a fraud. Even without that, as Judge Calabrese and Walker pointed out, the jury, well, the inspector jury is entitled to draw an inference of knowledge given certain evidentiary showings. And that's what appears to have happened here. How do you explain you didn't get a chance to answer that, his saying that he wasn't involved in his brother's business? Now, you know, that's a suspicious statement. I agree. I agree that it is a suspicious statement. But it is the law of this circuit that suspicious circumstances are not enough to sustain a conspiracy conviction. And when he's sitting on a couch in handcuffs and federal agents are going through his apartment asking questions about his brother's business, it's probably a natural reaction to say, oh, I don't know anything about it. If that's all there is, that is not enough to sustain the conviction. No, no. If that was all there was, that might not be enough. But you put that together with the show legitimacy and the fact that you did know of some complaints, isn't that put together enough? At least, you know, to allow a jury to make that inference. I'm sorry. Go ahead. I agree with you that a generic lie would not be enough unless there were other things. And it's those that I'm concerned about. But let me add some of the facts here. And again, I'm not drawing inferences when I rely on facts. And we put this in our appendix. With respect to Charlene Foster. Yes. Yes, your honor. Take a couple of minutes, but you are at the end of your time. So take a couple of minutes and then you'll have two minutes rebuttal as well. There was ample evidence that Katabchi would have believed that the business was legitimate. There were laptop computers that were provided to customers. There were business plans that were provided to customers. There were contracts that were discussed. There were sales call monitors and third party services that provided services to those customers. And so against that backdrop, it would have been reasonable for Katabchi to believe that this was a legitimate business. And in the absence of a representation by some witness that he knew that this was a fraud. The evidence was insufficient to support the conviction. Also, just one follow up question. In addition to the various customer complaints, there were two letters that were received by your client from the county of Passaic, New Jersey Department of Public Safety. That was investigating allegations of fraud against the company. And those and there were details spelled out in those letters. Your Honor. Your Honor. Your Honor, if I might finish my question, if I might finish my question, that that details were spelled out, which which were not just that they were just investigating. But there were actual complaints that they were that the Public Safety Commission thought was sufficient enough to warrant an investigation. And why isn't that also part of. As far as notice is concerned, Your Honor, if you look at those letters, it specifically says we recognize that there are differing views of how these things happen. There was not an investigation of fraud. There was a complaint by a customer and this was a telemarketing business. And the reason why credit card companies charged 15, 20, 25 percent was because telemarketing companies had a lot of complaints. So it's not a crime for him to believe that there were complaints. It's a crime if he knows that the business is defrauding people. All right. Each one of the two minutes of rebuttal. Yeah. Right. We'll hear from Ms. Van Ness with respect to Mr. Wimron. Yes. Good morning. As you know, the issues I'm raising relate solely to sentence and both involve in large part the consideration of defendants role in the defense. With respect to the minor role adjustment, I have identified three procedural errors that the court below made. One is to essentially correlate the defendant playing an essential role in the operation as evidence that he can't be considered as a minor participant. And that is belied by application of 3C as stated on page 23 of my brief. The government also asserted that a lot of salespeople had far less significant role than my client did. But that's not true as a matter of fact. There were only two other salesmen mentioned as possibly having a lesser role. And the government itself acknowledged that of the three tiers or four tiers of participants in the offense that it identified, Mr. Wimron was in tier three. And he was at the bottom of that tier. Furthermore, no one testified that Mr. Wimron was an aggressive salesman, though several testified that other people were, including Arash Katabchi. And one of the government cooperators, Mr. Finocchiaro, affirmatively testified that my client was not an aggressive salesman. The third procedural error that I talk about in the brief is the finding the court made that Mr. Wimron was an average participant in the fraud because secretaries and appointment setters played a lesser role. And as the application notes make clear, in order to be counted as a participant in the offense, the people involved have to be aware of the offense and participate in it. Just because you're employed by a business that's committing fraud doesn't mean you're a participant. So, yeah, the main problem with this is whether the other people who were involved and who had a lesser role than he did actually knew that had the knowledge so that they could be made part of it. And it's clear that the district court fought that. The district court didn't make an express finding to that effect. And that might be an issue, but this is plain error review. There was no objection below. So if we move to plain error, is that enough that there wasn't an express finding that these other people whom he considered to be less involved than your client had the requisite knowledge? Is that plain error? I believe it is, Your Honor, and especially in conjunction with the other procedural errors that I've identified. I think that the sentencing statute and the application notes that go with it were really ignored in substantial respects by the court below, who insisted that Mr. Oherman played a very essential role and that he was very involved in the operation and actually said he was an aggressive participant, and those are not supported by the record. Yeah, but isn't this the type of problem that plain error raises? I don't mean that the counsel below didn't did this, but isn't this a situation where you find the district judge not making a finding that is important to, is implicit in the decision, but is not, that is important and should have been made as to the knowledge of these other people? Counsel for your client doesn't say anything and then has the error. If he says something, the district court is in a position to make the finding. So isn't this exactly the kind of situation where we use plain error to make people help the court avoid this kind of mistake? Yes, I agree with that, and I do understand the necessity to preserve errors precisely for the reasons you mentioned. So the court has an opportunity to fix it if it is, in fact, an error. And the defense attorney did not. Go ahead. I didn't mean to interrupt you. Well, I was just going to say that the defense attorney did not make the specific claims that I'm making, but he did make a lot of arguments in his papers, and the judge dismissed some of his arguments without any analysis whatsoever, like the apportionment of restitution. And I think that when you have a situation that the defendant, who it clearly was not a mover or shaker by any means in this fraud, he started late. We don't know when he learned it was fraudulent. He made very little money, which he mostly lost, and then some, by the drug addiction that his bosses started, which further clattered his judgment. And to have him serve a 52-month sentence for his level of involvement, I think underscores that the district court went way down below the guidelines. The guidelines were 87 months. The pre-sentence report was 72. The district court sentenced him to 52. So I think the district court was taking into account many of these things which you are saying, even though it didn't find that he was fit the category of minor role. No, I acknowledge that, Your Honor, and my point is that the court started from a improperly inflated floor. Yeah. I'm not arguing against anchoring. I mean, if it was an error, then even though he gave a lower sentence, it doesn't matter because he starts from what he starts. But I'm suggesting that some of the factors that you are suggesting that mitigated this, your client's culpability, the court was aware of and taking into account in the sentence. Ms. Van Ness, I'm sorry. The judge made findings on the record, though, that show that he made these errors. And so I believe that a re-sentence is warranted. Yeah, of course. That's your argument. Yeah. All right. Thank you. Thank you very much, Ms. Van Ness. We'll hear from the government. May it please the court. This is Robert Sobelman, and I represent the United States on this appeal and the district court below. Unless the court has a different preference, I'll address the arguments made by Mr. Katachi's lawyer and then the arguments made by Ms. O'Wimron's lawyer. First, with respect to Mr. Katachi, Mr. Katachi's Rule 29 motion was denied at the conclusion of the government's case, and he did not renew that motion at the close of the defense case. Accordingly, Mr. Katachi's claim of insufficiency of the evidence is reviewed only for plain error or manifest injustice because the claim is unpreserved. There was more than sufficient evidence adduced at trial of Mr. Katachi's knowledge of and participation in the scheme. There are several examples of the evidence of Mr. Katachi's knowledge and participation laid out in our brief. I'll highlight just a few right now. Let me interrupt for a second. Yes, Your Honor. Could you be very specific about the evidence that he knew about A-1 only versus how A-1 fit in with the broader scheme? I mean, he participated for a very brief while and was involved in A-1, but there was a much larger scheme and other entities. So if you could be clear about that, that would help me. Yes, Your Honor. And to be clear, the government did not set out to prove and didn't have to prove that Mr. Katachi was aware of the entire scope of the scheme. There have been no claims of error as to the jury instructions in this case. And if Your Honors were to look at the jury instructions, they would, as we do, as the court instructs in conspiracy cases generally, specifically tells the jury that the member of the conspiracy, in order to be considered a member of the conspiracy with the requisite knowledge, doesn't have to know every other participant, doesn't have to know the full extent and scope, but obviously has to know the purpose of the scheme. I'm a little puzzled, counsel. I'm a little puzzled by the plain error argument with respect to Mr. Katachi. I understand it in the other case. But if somebody is convicted and the evidence is not sufficient so that the jury can find guilty on the reasonable doubt, that is surely plain error, isn't it? Your Honor, that's not what occurs here. The evidence was more than sufficient for the jury to convict, which it did. Then let's argue that. If the evidence – what is the evidence on the basis of which a jury could find guilt beyond a reasonable doubt? Because if that evidence is there, then plain error or non-error or anything else matters. If the evidence isn't there, then plain error doesn't matter. So I don't understand where plain error comes in in this case at all. It's a matter of what the evidence is. So let's talk about that. Yes, Your Honor. The first category I would point the court to is that Mr. Katachi was in receipt of complaints from victims explicitly describing the fraud. For example, victims Kayleen Zahn and Joseph Freeland described false earnings promises that were not kept, and those are at the supplemental appendix at pages 5 and 11. And these letters weren't simply sitting in a pile of unopened mail in Mr. Katachi's residence. He himself drafted responses to these complaints, brazenly characterizing them as, quote, 100% false and listing himself as the point of contact for handling the complaint. And that's at supplemental appendix page 9. A second category is text messages and emails with Arash Katachi, Mr. Katachi's brother, and others. In those text messages and emails, the defendant, Mr. Katachi, warned his brother about bank accounts being closed. That's at supplemental appendix 30. He suggested tactics to avoid further detection by other banks that they were using to perpetrate the fraud. That's also supplemental appendix at 30. The emails and text messages also show that Mr. Katachi was necessarily aware of several false representations made to banks by their merchant processor on their behalf in order to keep their accounts open despite the volume of fraud and refund claims that were coming in. And that's at supplemental appendix page 14. A third category are Katachi's statements when law enforcement arrived to search his residence and confirmed his consciousness of guilt. Specifically, Mr. Katachi attempted to stop the search from proceeding as the law enforcement agents were undertaking it, and that's at supplemental appendix 93. On that same page, you will find that the defendant falsely claimed that he, quote, had nothing to do with his brother's businesses. And this was not in the course of some type of sit-down interrogation. This is him urging the agents to stop the search while it's undergoing, while they are finding, some in hard copy, the types of complaints that I referenced earlier. In addition, Katachi's false and self-serving testimony at trial completely backfired and supported a finding of guilt. He was confronted with the letters that he wrote. I'm sorry, did your honor have a question? Sorry, I thought I heard something. He was confronted with letters that he wrote calling victims' claims of fraud 100% false, but then denied reading the claims that he was contradicting. And that's at Katachi's supplemental appendix 2 and 4. The jury could and did reject Katachi's testimony. The jury also could have relied on Katachi's false testimony to draw conclusions about his knowledge and intent, as well as his consciousness of guilt. In sum, when the evidence is viewed in the light most favorable to the government, and all inferences are drawn in the government's favor, the evidence was more than sufficient. That is why Katachi did not move for a judgment of acquittal at the close of the defense case, and why he did not file a motion for a judgment of acquittal after the trial concluded. In light of the evidence used at trial, and with due deference to the fact-finding role of the jury, any such motion would have and should have failed. Unless your honors have additional questions about Mr. Katachi, I will turn to respond to the arguments with respect to Mr. O'Wimron. Mr. O'Wimron's, yes, your honor? I was just saying, please proceed. Thank you, your honor. Mr. O'Wimron's mitigating role adjustment was well-supported by the record. Sorry, the declination to impose a mitigating role adjustment was well-supported by the record and entirely within the broad discretion of the district court. I note that in the defendant's brief on this point, unlike the argument we just heard, I don't see any reference to challenging the specific findings, factual findings made by the district court. So not only would those arguments that were just made be reviewed for plain error, but they actually are waived insofar as that argument may not have been made. However, the defendant bore the burden below of proving by a preponderance of the evidence that he was entitled to a mitigating role adjustment, and he failed to meet that burden. The district court's determination, of course, as to his role is, of course, reviewed at the very least for clear error, and this court would only reverse if there was an abusive discretion. Several of the factors set forth in the guideline commentary are plainly in support of the government's position and the district court's decision that O'Wimron was not a minor participant. First, the nature and extent of O'Wimron's participation in the commission of the criminal activity. His participation was inarguably extensive. He was a salesperson. He worked full time for the conspiracy in the scheme for two years. This is something he did day in, day out, 40, 50, 60 hours a week. This was not a one-off. This was not even a week off or a year off. This was a two-year-long participation. He also solicited funds under false pretenses on these calls from numerous victims, often on multiple occasions for each victim. The second factor that I would ask the court to look at is whether O'Wimron understood the scope and structure of the criminal activity. The testimony and evidence was clear that O'Wimron was one of the people on the front lines of the scheme lying to victims every day in order to obtain their money. He also heard others engaging – Yes, Your Honor. I'm just thinking about the minimal or minor role adjustment. I'm recalling that in the briefs, you and counsel for the defense seem to have a disagreement about the standard of review for us to apply. As to this factor, they're citing that the United States v. Gaston from 1995 in which we applied a de novo review to this determination. And more recently, you cite the United States v. Colon from 2000 and thereafter, I guess. How do you explain Gaston? Do you think it's well-established that we apply a clear error review and abuse only for abuse of discretion? Yes, Your Honor. We do think that's well-established. And where the court may have a potential conflict in the case law, the court should look to the most recent case, which here would be Colon. So, Gaston, you just think it's an anomaly? Yes, Your Honor. I have not performed a survey of the case law on this point because, frankly, we don't think that the argument rises or falls on the standard of review, unlike maybe a case where the issues are more close. Here, we think the facts are very clear and that even under either standard, the government would get affirmance here. Okay, thank you. Would Your Honor like me to continue discussing one or two of the additional factors? You were talking about his understanding of the scheme. Yes, Your Honor. Just to pick up where I left off, he also heard others engaging in the same type of activity at their telemarketing floor. There was evidence that there were many other people, some of whom were charged in the case and pled guilty before trial, and some of whom were not charged, who participated in the same type of activity day in, day out, giving very similar lies to different victims as part of the scheme. Also, women understood that their scheme involved upselling victims who had been victimized by other related schemes earlier in time. The third factor that weighs heavily in favor of finding no mitigating role adjustment was whether a woman stood to benefit from the criminal activity. Defense counsel tried to downplay the amount of money he made, but let's be clear, he made over $100,000 from the scheme. And if Your Honors review the trial transcript and read some of the victim testimony, it is heartbreaking to hear how elderly people were taken advantage of and liquidated in some cases their life savings, their retirement accounts, took out additional credit cards that were immediately maxed out that they could not afford, based on the false promises that women and others were giving. So to try to downplay the amount of money that he personally made and say, well, he spent it on drugs anyway, well, that's money that's coming out of real individual victims' pockets. And we would argue that over $100,000 in benefits is substantial. And the way in which he benefited also matters for the analysis of this factor. He earned a commission on each fraudulent sale rather than a fixed salary. That's Supplemental Appendix 51. So it's not as if, you know, the analogy. Yes, Your Honor. Please wrap up. Yes, Your Honor. It's not as if the analogy, some of the analogies in the guidelines commentary, like a courier who's paid $500 to deliver a bundle of drugs on a one-off, is even remotely comparable. For those reasons and the reasons set forth in our brief, we would ask that the court affirm the judgment of the conviction as to both Mr. Hitachi and Mr. O'Wimron. Thank you, Your Honor. I have just one very brief question. Your point about earning a commission on each sale is making the point that the money that ended up in his pocket was a percentage of the fraud, not the complete fraud of that particular sale. Is that accurate? Yes, Your Honor, that's correct. And the factor is whether the defendant stood to benefit from the criminal activity, and we would argue that he did. Yes, but what was the rate of commission? Do you know offhand? I don't have the number off the top of my head, but it did vary depending on the tenure of the salesperson with the organization, their volume of sales, et cetera. My recollection stands somewhere in the 10 to 50 percent range, depending on the particular instance. I see. Okay, thank you. All right, thank you. Thank you very much, Mr. Sobelman. Mr. Perez, you have two minutes of rebuttal. Thank you, Your Honor. I would like to just make three points briefly. The first is with respect to the letter that was sent to the county of Passaic. I did locate that in the record. It indicates to A1, the office is in receipt of a complaint filed against you by the above customer. Please be advised that this office investigates cases evidencing fraud, deceit, or misrepresentation. And then it says this department recognizes that situations such as this arise from differing viewpoints and interpretations of the facts. For this reason, we do not prejudge any complaint, et cetera, et cetera. And so that was not the same as receiving proof that there was a fraud going on at A1. It was a complaint by a customer, two very different things. With respect to the representation by the government that it's made throughout this case that Katapshi somehow tried to interfere with the search, that's simply not so. And I would direct the court to page SA93. The statement by the investigating or searching officer was that Katapshi seemed agitated and told us to cease immediately searching his apartment and that he wanted to call an attorney. That's not the same as interfering with the search. That's somebody who's trying to avail himself of his right to counsel and is concerned that his home is being searched improperly. Finally, with respect to the exchanges about the differing bank accounts and transferring money between the accounts, the issue was that Arash, like Sinclair, was on, in effect, this blacklist. And the credit card companies would not permit them to do business. And so the workaround that they came up with, which I'm not suggesting is the greatest thing in the world but it is legal at least, is to put it in somebody else's name. Put the credit card processing account in somebody else's name. And that's what they did. And throughout this process, again, to go back to my original argument, there were other people who were defending chargebacks. That's all that Katapshi did. There was a lawyer who was defending chargebacks. And then there was Heidi Brown, I believe her name was, who said there's lots of red flags going off, but if you want to hire my company to help us defend the chargebacks, please let us know. And so against that context, there was no way for Katapshi to know that these elderly people were being defrauded of their money or being scammed out of hundreds of thousands of dollars. Thank you. All right. Thank you very much. We have the arguments. We will reserve decision.